**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
WENDY LEE REYNOLDS,          )
                             )
              Plaintiff,     )
                             )
     v.                      )        1:21CV199
                             )
KILOLO KIJAKAZI,             )
Acting Commissioner of Social)
Security,                    )
                             )
              Defendant.¹    )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Wendy Lee Reynolds, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 11 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 15, 17; see also Docket Entry 16 (Plaintiff's Memorandum); Docket Entry 18 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

¹ President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI (Tr. 291-97),[2] alleging a disability onset date of July 6, 2018 (see Tr. 291, 294).[3]  Upon denial of those applications initially (Tr. 105-39, 178-99), and on reconsideration (Tr. 140-74, 202-19), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 220-21).  Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 37-79), during which the ALJ granted Plaintiff's motion to amend the onset date to September 22, 2018, and to withdraw the request for hearing on her DIB claim (see Tr. 45; see also Tr. 12-13 (dismissing DIB claim)).  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 9-31.)  The Appeals Council denied Plaintiff's request for review (Tr. 1-6, 288-90), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings, later adopted by the Commissioner:

> 1.  [Plaintiff] has not engaged in substantial gainful activity since September 22, 2018, the amended alleged onset date.
>
> 2.  [Plaintiff] has the following severe impairments: bipolar disorder; anxiety; attention-deficit/

---

[2] Plaintiff's application for SSI does not appear in the record.

[3] Plaintiff previously applied for DIB and SSI in August 2015 (see Tr. 83), and an ALJ denied those claims on July 5, 2018 (Tr. 80-99).  Plaintiff did not seek further review of that unfavorable ALJ decision.  (See Tr. 106.)

hyperactivity disorder; borderline personality disorder; post-traumatic stress disorder; migraines; and degenerative disc disease.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . in that she could lift, carry, push, and/or pull fifty pounds occasionally and twenty-five pounds frequently; sit six hours of an eight-hour workday; and stand/walk six hours of an eight-hour workday. She can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. She can have only occasional exposure to pulmonary irritants, including dust, fumes, odors, gasses, and poor ventilation, and she can have only occasional exposure to unprotected heights and hazardous machinery. She is limited to understanding, remembering, and carrying out simple instructions, which is defined to mean activity that is consistent with a reasoning level of "two" or "three," as defined in the [Dictionary of Occupational Titles ('DOT')]; and she can sustain concentration, attention, and pace well enough to carry out those simple instructions for two-hour intervals over the course of an eight-hour workday. She is limited to working in a low stress setting, which is specifically defined to mean: no paced production, such as on an assembly line; only simple, work-related decisions; few or no changes in the work setting; no dealing with emergent situations as an essential function of the job; and only superficial contact with the public, where "superficial" is defined to mean the contact is incidental and not an essential function of the job. She can have only occasional interaction with coworkers.

. . .

5. [Plaintiff] is capable of performing past relevant work as a price marker, [DOT] #209.587-034. This work does not require the performance of work-related

activities precluded by [Plaintiff]'s residual functional capacity.

. . .

Because of the uncertainty regarding the date [Plaintiff] stopped performing [her past relevant] work [as a price marker], the [ALJ] has also considered whether there are jobs existing in significant numbers in the national economy that [Plaintiff] can perform, considering [her] age, education, work experience, and residual functional capacity.

. . .

[C]onsidering [Plaintiff]'s age, education, work experience, and residual functional capacity, [she] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

6. [Plaintiff] has not been under a disability, as defined in the . . . Act, from September 22, 2018, through the date of this decision.

(Tr. 15-30 (bold font, internal parenthetical citations, and footnotes omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

4

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These

---

[4] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[6] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

---

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations
(continued...)

8

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to conduct a proper function-by-function analysis of [Plaintiff's] migraine headaches and failure to provide a logical bridge between the evidence in the record, [the ALJ's] conclusions and her RFC findings prevents [her] conclusions from being supported by substantial evidence" (Docket Entry 16 at 7 (bold font and single-spacing omitted)); and

2) "[t]he ALJ's [s]tep 3 conclusion that [Plaintiff's] migraines do not equal the mostly closely [sic] analogous neurological impairments is not supported by substantial evidence" (id. at 17 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (See Docket Entry 18 at 5-21.)

### 1. Function-by-Function Analysis

In Plaintiff's first assignment of error, she maintains that "[t]he ALJ's failure to conduct a proper function-by-function analysis of [Plaintiff's] migraine headaches and failure to provide a logical bridge between the evidence in the record, [the ALJ's] conclusions and her RFC findings prevents [her] conclusions from

---

[7](...continued)
of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

being supported by substantial evidence." (Docket Entry 16 at 7 (bold font and single-spacing omitted).) More specifically, Plaintiff contends that the ALJ 1) "fail[ed] to address any of the qualifying statements made by [Plaintiff] during her testimony" (id.), 2) "fail[ed] to provide a 'logical bridge' explaining why [Plaintiff's] migraine headaches did not require corresponding limitations accounting for unscheduled breaks, tardiness, off task behaviors and/or absenteeism in the RFC" (id. at 10-11), 3) "ignored significant evidence regarding the ongoing frequency and severity of [Plaintiff's] migraine headaches by mischaracterizing or cherrypicking facts or statements in the record" (id. at 12), 4) improperly "reference[d Plaintiff's] normal physical and neurological examinations to support [the ALJ's] negative conclusions regarding the consistency of [Plaintiff's] allegations with the evidence" (id. at 13-14), and 5) "reli[ed] on [Plaintiff's] ability to work part time throughout the relevant period" but "d[id] not address or reconcile [her] testimony regarding [her] flexible part time work schedule" (id. at 15). For the reasons that follow, those assertions entitle Plaintiff to no relief.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's

impairments, as well as any related symptoms, including pain. <u>See</u> <u>Hines</u>, 453 F.3d at 562–63; 20 C.F.R. § 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). <u>See</u> 20 C.F.R. § 416.967. Any non-exertional limitations may further restrict a claimant's ability to perform jobs within an exertional level. <u>See</u> 20 C.F.R. § 416.969a(c).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). . . . The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Social Security Ruling 96-8p, <u>Policy Interpretation Ruling Titles</u> <u>II and XVI: Assessing Residual Functional Capacity in Initial</u> <u>Claims</u>, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p"). Although the ALJ need not discuss every piece of evidence in making an RFC determination, <u>see Reid v. Commissioner of Soc. Sec.</u>, 769 F.3d 861, 865 (4th Cir. 2014), he or she "must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion," <u>Woods v. Berryhill</u>, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that

11

determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, it stated "that a per se rule is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the ALJ did not perform an express function-by-function analysis of Plaintiff's work-related abilities (see Tr. 19-28); however, no basis for remand exists because, for the reason explained more fully below, the ALJ's decision nevertheless

12

supplies the necessary "accurate and logical bridge," <u>Woods</u>, 888
F.3d at 694 (internal quotation marks omitted), between the
evidence and her findings that Plaintiff's (A) migraine headaches
qualified as "severe" (Tr. 15) but (B) did not cause limitations
greater than those reflected in the RFC (<u>see</u> Tr. 19; <u>see also</u> Tr.
23 (providing that Plaintiff's "migraines in combination with her
other impairments [] limit her to occasional exposure to pulmonary
irritants, . . . hazardous machinery[,] and unprotected heights,"
as well as "contribute to limiting her to understanding,
remembering, and carrying out simple instructions")).

### a. Qualifying Statements

Plaintiff first contends that, although the ALJ "summarized
[Plaintiff's] testimony regarding her migraine headaches" (Docket
Entry 16 at 7 (citing Tr. 20)), the ALJ "fail[ed] to address any of
the qualifying statements made by [Plaintiff] during her testimony"
(<u>id.</u>). By way of example, Plaintiff points to her testimony "that
she generally experienced headaches 'every other day' but that she
had 'good days and bad days' noting that 'they [we]re not on the
same severity level every single time because [she] d[id] take the
medication'[ and] . . . that if she c[ould] catch the headache with
medication . . . 'it[ wa]s not as severe as it could [have] be[en]
but it[ wa]s still there'" (<u>id.</u> (quoting Tr. 66)), that she
experienced "visual limitation, nausea/vomiting . . . and pain"
(<u>id.</u> (citing Tr. 67)), as well as "medication side effects

including drowsiness" (id. (citing Tr. 66)), and that a "'real bad headache' [] would generally last '36 to 48 hours' during which she would treat her symptoms by taking medications, laying in a dark room, really quiet, no light and just resting or falling asleep" (id. at 8 (citing Tr. 67)). According to Plaintiff, her "testimony is generally consistent with the evidence of record and her reports to her treating providers." (Id.; see also id. at 8-10 (detailing evidence Plaintiff believes harmonizes with her testimony (citing Tr. 402, 453, 455, 461-64, 468, 485, 554-56, 600-01, 614, 616, 912-15, 930-31, 933))). Those contentions fall short.

As an initial matter, although the ALJ did not expressly discuss Plaintiff's above-quoted testimony (see Tr. 19-28), the ALJ labored under no obligation to discuss each and every statement made by Plaintiff at the hearing, see Janet E.F. v. Saul, No. 5:20CV1638, 2021 WL 2808699, at *3 n.5 (C.D. Cal. July 6, 2021) (unpublished) ("[A]n ALJ is not required to discuss every piece of evidence or explain why every subjective limitation has been rejected . . . ."); Woods v. Saul, No. CIV-19-140, 2019 WL 6620494, at *3 (W.D. Okla. Nov. 19, 2019) (unpublished) (holding ALJ "had no legal duty to identify each of [the p]laintiff's specific statements" when analyzing her subjective symptom reporting), recommendation adopted, 2019 WL 6617405 (W.D. Okla. Dec. 5, 2019) (unpublished). Moreover, the ALJ did explicitly recognize

14

Plaintiff's testimony regarding both the alleged <u>frequency</u> and <u>severity</u> of her headaches:

> [Plaintiff] alleges that she has migraine headaches at least <u>three to four times a week</u> . . . . She also testified that her condition <u>worsened</u> since her previous hearing. She testified that she sustained a concussion in December 2018 when she fell in an icy parking lot, and that her headaches had been <u>worse</u> since then.

(Tr. 20 (emphasis added) (internal parenthetical citation omitted).) Furthermore, at the outset of the RFC analysis, the ALJ stated that she "ha[d] considered <u>all symptoms</u> and the extent to which th[o]se symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence" (Tr. 19 (emphasis added)), and Plaintiff has not offered any reason that the Court should disregard that statement by the ALJ (<u>see</u> Docket Entry 16 at 7-17). <u>See</u> <u>Woods</u>, 2019 WL 6620494, at *3 ("[T]he ALJ specifically mentioned [the p]laintiff's allegations of pain and [t]he [ALJ] stated that he was considering 'all symptoms' in his assessment. The [c]ourt takes the ALJ at his word . . . .").

In addition, consideration of the entirety of the ALJ's decision makes clear that she rejected Plaintiff's testimony that her headache symptoms disabled her. The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision" (Tr. 20), and further supported that finding with the following analysis:

15

> At the hearing, [Plaintiff] reported that she stopped
> working at Walmart because . . . she had missed too much
> work due to migraine headaches.  However, there is no
> evidence to support this in the medical records.  Her
> therapy notes have regularly noted that [she] was
> enjoying her work, and that she had even increased her
> hours at one point.  There is also little, if any,
> evidence showing that [she] missed too much work due to
> migraines, as it was repeatedly reported that the Aimovig
> was helping her migraines "tremendously."  [Her] mental
> health providers, as well as Physician Assistant [Elaine
> A.] Fox [("PA Fox")], also regularly reported that
> [Plaintiff's] attention span, concentration, and memory
> were normal.  The [ALJ] finds that [Plaintiff]'s return
> to the workforce suggests an improvement in her condition
> since the prior hearing decision.  It is also notable
> that, despite her reports of worsening symptoms, her
> earnings were increasing throughout the period at issue,
> also indicating that her condition was improving.
> Additionally, after her job at Walmart ended, [Plaintiff]
> told her therapist that she was looking for another job.

(Tr. 24-25 (internal parenthetical citation omitted).) Under such circumstances, the absence of a more exhaustive review of Plaintiff's testimony did not prejudice Plaintiff. See Parker v. Barnhart, 431 F. Supp. 2d 665, 673 (E.D. Tex. 2006) (noting that, although ALJ "never expressly mentioned [the] plaintiff's subjective testimony regarding the need to sit in a recliner with his feet elevated[ ], [t]he [ALJ] clearly did not disregard the plaintiff's testimony," as the ALJ acknowledged other testimony and "clearly . . . thought that [the] plaintiff's complaints of disabling pain were exaggerated," and that, "[b]y necessary implication, [t]he [ALJ] clearly rejected [the] plaintiff's testimony about the need to recline with elevated feet").

16

**b.   Unscheduled Breaks, Tardiness, Off-Task Time, and Absenteeism**

Next, Plaintiff maintains that the ALJ "fail[ed] to provide a 'logical bridge' explaining why [Plaintiff's] migraine headaches did not require corresponding limitations accounting for unscheduled breaks, tardiness, off task behaviors and/or absenteeism in the RFC." (Docket Entry 16 at 10-11.) In support of that argument, Plaintiff points to her testimony (see id. at 7 (citing Tr. 66-67)) and record evidence (see id. at 8-10 (citing Tr. 402, 453, 455, 461-64, 468, 485, 554-56, 600-01, 614, 616, 912-15, 930-31, 933)) regarding her migraines that she believes should have compelled the ALJ to adopt such additional limitations. In particular, Plaintiff highlights her subjective reports of headache frequency and severity to treatment providers at the headache clinic. (See id. at 10 n.4 (providing "chart . . . that summarizes [her] reported headaches").) As the Court can trace the path of the ALJ's reasoning regarding the RFC, Plaintiff's arguments miss the mark.

To begin, the ALJ's consideration of Plaintiff's testimony helps explain the limitations in the RFC. As explained above, the ALJ acknowledged Plaintiff's testimony that she experiences "migraine headaches at least three to four times a week," and that her "headaches had been worse" since her concussion in December 2018, but found that "[Plaintiff]'s statements concerning the intensity, persistence and limiting effects of [her] symptoms

17

[we]re not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20.) Significantly, in further support of that finding, the ALJ noted that Plaintiff's "therapy notes ha[d] regularly noted that [she] was enjoying her work, and that she had even increased her hours at one point," that "little, if any, evidence [existed] showing that [Plaintiff] missed too much work due to migraines, as it was repeatedly reported that the Aimovig was helping her migraines 'tremendously,'" and that "[her] mental health providers, as well as [PA] Fox, [] regularly reported that [Plaintiff's] attention span, concentration, and memory were normal." (Tr. 25.) Those findings sufficiently explain why the ALJ did not include allowances for unscheduled breaks, tardiness, time off-task, and absenteeism in the RFC.

The ALJ's evaluation of the opinion evidence further explicates her decisionmaking with respect to the RFC. In that regard, the ALJ found "mostly persuasive" the opinions of the state agency medical consultants (Tr. 25), who expressly considered the evidence relating to Plaintiff's complaints of migraine headaches (see Tr. 111-12, 117-18, 161, 167-68), but nevertheless found that she remained capable of a limited range of medium work without allowances for unscheduled breaks, tardiness, time off-task, and absenteeism (see Tr. 116-17, 165-67).[8] Similarly, the ALJ deemed

---

[8] The ALJ noted that "the updated evidence warrant[ed] some additional or more specific limitations" (Tr. 25) and, in accordance with that statement, changed the consultants' preclusion of "concentrated" exposure to certain
(continued...)

Case 1:21-cv-00199-CCE-LPA   Document 19   Filed 04/27/22   Page 18 of 33

"mostly persuasive" the opinions of the state agency psychological consultants (Tr. 26), who opined that, despite "[m]oderate" limitation in Plaintiff's ability to "[c]oncentrate, persist, or maintain pace" (Tr. 113, 162), she remained "able to maintain attention and concentration for 2 hours at a time as required for the performance of simple tasks" without an allowance for unscheduled breaks (Tr. 119, 169).[9] Moreover, despite finding Plaintiff "[m]oderately limited" in "[t]he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" (Tr. 119, 169), the consultants did <u>not</u> include any limitations relating to tardiness or absenteeism in the mental RFC (<u>see</u> Tr. 118-20, 168-70).

Furthermore, the evidence Plaintiff cites would not have <u>compelled</u> the ALJ to include allowances for unscheduled breaks, tardiness, time off-task, or absenteeism in the RFC. (<u>See</u> Docket Entry 16 at 7-10 (citing Tr. 66-67, 402, 453, 455, 461-64, 468, 485, 554-56, 600-01, 614, 616, 912-15, 930-31, 933).) That

---

[8](...continued)
environmental elements (Tr. 117, 167) to "occasional" exposure to those elements (Tr. 19).

[9] The ALJ noted that she "did not find persuasive the finding that [Plaintiff] would be limited to 'one-to-two' step instructions," because the ALJ found "such a limitation [] excessive, given the mostly mild or benign findings on mental status examinations and [Plaintiff]'s work activity." (Tr. 26.) In that same vein, the ALJ explained that "the suggestion that [Plaintiff] would only accept instructions, respond appropriately to criticism, and interact appropriately with others on an occasional basis [wa]s not supported by or consistent with the mostly mild or benign findings on mental status examinations, the observations of and [Plaintiff]'s reports to her treatment providers, and [Plaintiff]'s work activity." (<u>Id.</u>)

19

evidence reflects her <u>subjective</u> complaints of migraine-related symptoms (which the ALJ discounted (<u>see</u> Tr. 20)), and contains <u>objectively</u> normal findings relating to her distress levels (<u>see</u> Tr. 468, 485), as well as her alertness, attention, and concentration (<u>see</u> Tr. 454, 463, 468, 486, 556, 601, 914, 933).

**c.   Mischaracterizing and/or Cherrypicking Evidence**

Next, Plaintiff faults the ALJ for "ignor[ing] significant evidence regarding the ongoing frequency and severity of [Plaintiff's] migraine headaches by mischaracterizing or cherrypicking facts or statements in the record." (Docket Entry 16 at 12.)  In particular, Plaintiff points out that the ALJ relied on Plaintiff's "reports of tremendous improvement with Aimovig but fail[ed] to note that . . . [Plaintiff] continued to report a minimum of 7 severe migraine headaches a month." (<u>Id.</u> (internal quotation marks omitted).)  According to Plaintiff, "[t]he ALJ's reliance on notes of documented improvement and stability [wa]s error when the records, on closer review, clearly reflect the ongoing presence of migraine headaches that occur at a frequency and severity that would severely impact [Plaintiff's] functioning multiple days a month despite the improvement and stability she reported from treatment interventions." (<u>Id.</u> at 13.)

This argument fails, because it again relies <u>entirely</u> on Plaintiff's <u>subjective</u> reports of headache symptoms. (<u>See id.</u> at 12 (faulting ALJ for "fail[ing] to note that . . . [Plaintiff]

continued to <u>report</u> a minimum of 7 severe migraine headaches a month" (emphasis added)).) In essence, Plaintiff's mischaracterization/cherrypicking argument merely repackages the unsuccessful arguments Plaintiff earlier made, i.e., that the ALJ "fail[ed] to address any of the qualifying statements made by [Plaintiff]" in describing her migraine symptoms. (Docket Entry 16 at 7 (citing Tr. 20).) As discussed above, because the ALJ's decision as a whole makes clear that she discounted Plaintiff's statements regarding the intensity and limiting effects of her migraine symptoms, Plaintiff has not shown that the ALJ's omission of an express discussion of Plaintiff's quantitative headache reports to PA Fox prejudiced her in any way. <u>See</u> <u>Parker</u>, 431 F. Supp. 2d at 673 (noting that, although ALJ "never expressly mentioned [the] plaintiff's subjective testimony regarding the need to sit in a recliner with his feet elevated[ ], [t]he [ALJ] clearly did not disregard the plaintiff's testimony," as the ALJ acknowledged other testimony and "clearly . . . thought that [the] plaintiff's complaints of disabling pain were exaggerated," and that, "[b]y necessary implication, [t]he [ALJ] clearly rejected [the] plaintiff's testimony about the need to recline with elevated feet").

### d. **Over-Reliance on Objective Medical Evidence**

Plaintiff additionally objects to the ALJ's "references [to Plaintiff's] normal physical and neurological examinations to

support [the ALJ's] negative conclusions regarding the consistency of [Plaintiff's] allegations with the evidence" (Docket Entry 16 at 13-14), such as "the ALJ['s] mention[ of] the 'few, if any, objective findings' noted by her providers at the Headache Clinic" and her "normal gait" (id. at 14 (quoting Tr. 23)).  In Plaintiff's view, "[i]t is not clear what physical and neurological findings the ALJ [wa]s requiring[,] as the SSA's own guidance indicates that[,] 'while imaging may be useful in ruling out other possible causes of headache symptoms, it is not required for a primary headache disorder diagnosis.'"  (Id. (quoting Social Security Ruling 19-4p, Titles II and XVI: Evaluating Cases Involving Primary Headache Disorder, 2019 WL 4169635, at *4 (Aug. 26, 2019) ("SSR 19-4p")).)  In addition, Plaintiff contends that, because "the ALJ concluded that [Plaintiff's] migraine headache disorder . . . 'could reasonably be expected to cause the alleged symptoms'" (id. (quoting Tr. 20)), Plaintiff "[wa]s entitled to rely on subjective evidence to prove the severity of her symptoms" (id. (citing Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"))).  Plaintiff's contentions miss the mark, because the administrative rulings upon which she relies actually dispel her arguments.

To begin, neither the ALJ's notation of findings such as normal attention, concentration, and gait in Plaintiff's headache

22

treatment records (see Tr. 21-23), nor the ALJ's observation that PA Fox at the Headache Clinic "reported few, if any, objective findings" (Tr. 23) runs afoul of SSR 19-4p. That Ruling states only that a diagnosis of primary headache disorder does not require "imaging" evidence, SSR 19-4p, 2019 WL 4169635, at *4, and actually emphasizes the importance of objective medical evidence in assessing the intensity, persistence, and limiting effects of headache symptoms:

> How do[es an ALJ] consider a[ medically determinable impairment] of a primary headache disorder in assessing a [claimant]'s [RFC]?
>
> If a [claimant]'s primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the [SEP], [the ALJ] assess[es] the [claimant]'s [RFC]. [The ALJ] must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a [claimant]'s RFC. . . .
>
> [The ALJ] consider[s] the extent to which the [claimant]'s impairment-related symptoms are consistent with the evidence in the record. For example, symptoms of a primary headache disorder, such as photophobia, may cause a person to have <u>difficulty sustaining attention and concentration</u>. <u>Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC</u>.

Id. at *8 (emphasis added); see also id. at *6 (listing "problems concentrating" and "gait instability" as among the "co-occurring observable signs" of a headache event that an acceptable medical source can document to substantiate the presence of a primary headache disorder); Ruehl v. Kijakazi, No. 2:20CV3846, 2021 WL 4046432, at *7 (D.S.C. Aug. 6, 2021) (unpublished) (observing that

"courts in this circuit have repeatedly found no error where the ALJ relied in part on normal diagnostic and exam findings to discount the severity of a claimant's headaches") (collecting cases), recommendation adopted, 2021 WL 4037481 (D.S.C. Sept. 3, 2021) (unpublished).

Plaintiff's argument under SSR 16-3p fares no better. That Ruling does not provide that a claimant can "rely on subjective evidence to prove the severity of her symptoms" (Docket Entry 16 at 14); rather, the Ruling states as follows regarding the role of objective medical evidence in evaluating the intensity, persistence, and limiting effects of symptoms:

> Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . . [An ALJ] must consider whether a[ claimant]'s statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.
>
> The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. Examples such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain. . . . .
>
> [An ALJ] will not disregard a[ claimant]'s statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the [claimant]. A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors [an ALJ] must

24

> consider in evaluating the intensity, persistence, and
> limiting effects of a[ claimant]'s symptoms.

SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added) (footnote omitted). Here, as discussed above, and in compliance with SSR 16-3p, the ALJ relied on objective medical evidence as <u>one part</u> of her analysis of Plaintiff's subjective symptom reporting, as the ALJ also considered Plaintiff's favorable response to treatment, ability to work part-time, and the opinion evidence (<u>see</u> Tr. 19-28).

### e.  Consideration of Part-Time Work

In the last of her complaints regarding the ALJ's RFC analysis, Plaintiff maintains "that the ALJ's reliance on [Plaintiff's] ability to work part time throughout the relevant period is misplaced" (Docket Entry 16 at 15), because "'[a]n ALJ may not consider the type of activities [a] claimant can perform without also considering the extent to which she can perform them'" (<u>id.</u> (quoting <u>Woods</u>, 888 F.3d at 694-95)). According to Plaintiff, "like the ALJ in *Woods*[,] the ALJ [here] fail[ed] to consider the extent to which [Plaintiff] actually engaged in [part-time work] activities," by "dismiss[ing]" Plaintiff's testimony that she missed "'about 30 days'" of work in a year (<u>id.</u> (citing Tr. 25, quoting Tr. 61)) and "not address[ing] or reconcil[ing Plaintiff's] testimony regarding [her] flexible part time work schedule" (<u>id.</u> (citing Tr. 54); <u>see also</u> <u>id.</u> at 16 (noting her consistent description of her job to mental health providers (citing Tr. 593,

25

620))).   Plaintiff also objects to the ALJ's finding that Plaintiff's "reports of 'enjoying her work' undermine her allegations regarding absenteeism and/or difficulty working on a set schedule."   (Id. at 16 (quoting Tr. 24, 25).)   Plaintiff's arguments do not warrant relief.

The ALJ acknowledged that Plaintiff worked only "on a part-time basis" (Tr. 17) and, as discussed above, did not merely "dismiss" Plaintiff's testimony that she missed "about 30 days" of work in a year (Tr. 61).   Rather, the ALJ explained that "there [wa]s no evidence to support th[at allegation] in the medical records," as Plaintiff's "therapy notes ha[d] regularly noted that [she] was enjoying her work, and that she had even increased her hours at one point."   (Tr. 24-25.)   Contrary to Plaintiff's argument, the absence of reports of frequent work absences on account of migraines in Plaintiff's therapy notes, combined with her repeated reports of enjoying her work, undermine her subjective report of missing excessive amounts of work due to migraine headaches.   Indeed, in the therapy note Plaintiff singles out as consistent with her testimony regarding her flexible work schedule (see Docket Entry 16 at 16 (citing Tr. 593, 620)), Plaintiff informed her therapist only that "it ha[d] been hard for [her] to be on [her] feet for long hours" and did not mention any adverse impact caused by migraines.   (Tr. 593 (emphasis added); see also Tr. 620 (duplicate copy of same therapy note).)   Plaintiff simply

26

has not shown that the ALJ improperly considered Plaintiff's ability to work a part-time job during much of the relevant period in formulating the RFC.

In sum, Plaintiff's first issue on review falls short.

## 2. Neurological Listings

Lastly, Plaintiff contends that "[t]he ALJ's [s]tep 3 conclusion that [Plaintiff's] migraines do not equal the mostly closely [sic] analogous neurological impairments is not supported by substantial evidence." (Docket Entry 16 at 17 (bold font and single-spacing omitted).) In that regard, Plaintiff argues that "the record contains a significant amount of probative evidence that her migraine headache disorder could equal Listing 11.02(B)" under Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (Docket Entry 16 at 17), and the criteria for medically equaling that Listing described in SSR 19-4p, 2019 WL 4169635, at *7 (see Docket Entry 16 at 18). According to Plaintiff, "the ALJ's failure to properly apply the requirements of Listing 11.02(B) to the evidence and then explain how she reached her conclusion that [Plaintiff] did not medically equally [sic] the Listing is error that prevents [the ALJ's s]tep 3 conclusion from being supported by substantial evidence." (Id. at 17.)

"Under Step 3, the [SSA's SEP] regulation states that a claimant will be found disabled if he or she has an impairment that 'meets or equals one of [the] listings in appendix 1 of [20 C.F.R.

27

Pt. 404, Subpt. P] and meets the duration requirement.'" <u>Radford</u>, 734 F.3d at 293 (quoting 20 C.F.R. § 404.1520(a)(4)(iii) (internal bracketed numbers omitted)). "The listings set out at 20 CFR pt. 404, subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990) (internal footnote and parentheticals omitted).

"In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 160 (4th Cir. 1990) (citing <u>Zebley</u>, 493 U.S. at 530, and 20 C.F.R. 404.1526(a)); <u>see also</u> <u>Zebley</u>, 493 U.S. at 530 ("An impairment that manifests only some of those criteria [in a listing], no matter how severely, does not qualify."). "An impairment or combination of impairments medically equals a listing when it is <u>at least equal in severity</u> and duration to the criteria of any listed impairment." <u>Grimes v. Colvin</u>, No. 1:14CV891, 2016 WL 1312031, at *4 (M.D.N.C. Mar. 31, 2016) (unpublished) (Osteen, Jr., C.J.) (citing 20 C.F.R. § 416.926(a)-(b)) (emphasis added).

"[O]nly where there is <u>ample</u> evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed

28

impairments and compare them to evidence of a plaintiff's symptoms." Reynolds v. Astrue, No. 3:11CV49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) (unpublished) (emphasis added) (citing Cook v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir. 1986)); see also Russell v. Chater, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("Cook, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion [of listings] in all cases.").[10]

Listing 11.02(B) requires proof of "[d]yscognitive seizures [] occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 11.02(B) (internal parenthetical citations omitted). The introduction to the neurological listings describes

---

[10] The Cook court's confinement of the ALJ's duty to explicitly identify listings and compare their elements to the record to situations in which the claimant comes forward with "ample evidence" that an impairment meets a listing makes sense. "Step two of the [SEP] is a threshold question with a de minimis severity requirement," Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir. 2011) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)), but "[t]he criteria in the medical listings [at step three] are demanding and stringent," Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994) (internal quotation marks omitted); see also Zebley, 493 U.S. at 532 ("[The Social Security Administration] has set the medical criteria defining the listed impairments at a higher level of severity than the statutory [disability] standard."). Accordingly, the mere fact that an impairment qualifies as severe at step two does not suggest that it meets a listing at step three. No reason thus exists for courts to require ALJs to document the manner in which every impairment deemed severe at step two fails to meet a listing at step three; rather, common sense supports the Fourth Circuit's decision in Cook to insist that ALJs discuss a specific listing only when the claimant marshals "ample evidence" that an impairment actually meets the criteria for that listing. Nor does the more recent ruling in Radford counsel otherwise. Although the Fourth Circuit there remanded due to an ALJ's "insufficient legal analysis" at step three, it did so consistently with the standard set in Cook, as the record contained "probative evidence strongly suggesting that [the claimant] me[t] or equal[ed a particular listing]." Radford, 734 F.3d at 295.

"[d]yscognitive seizures" as "characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." Id., ¶ 11.00(H)(1)(b).

SSR 19-4p acknowledges that no specific listing exists for migraine headaches and notes that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in [L]isting 11.02[(B)]." SSR 19-4p, 2019 WL 4169635, at *7 (emphasis added). To determine whether a claimant's migraine headaches medically equal the criteria of Listing 11.02(B), an ALJ must:

> consider[ a] detailed description from a[n acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

Id. (emphasis added).

In this case, the ALJ noted that he had "considered [Plaintiff]'s headaches under SSR 19-4p and f[ound] that the

30

severity of [her] migraine headaches d[id] not meet the criteria of any of the listings of section eleven, regarding neurological impairments." (Tr. 17.) The ALJ did not provide an analysis specific to Listing 11.02(B), but did not err in that regard, because, as explained more fully below, the record lacks "ample evidence" that Plaintiff's migraine headaches met or equaled that Listing, Cook, 783 F.2d at 1172-73.

Significantly, the record lacks "[a] detailed description from a[n acceptable medical source] of a typical headache event, including all associated phenomena," SSR 19-4p, 2019 WL 4169635, at *7. Although Plaintiff contends that "[t]he record . . . contains a detailed description of her typical headache event from the Headache Clinic" (Docket Entry 16 at 18 (citing Tr. 461-64)), the record in question reflects only Plaintiff's subjective description of her headache history and symptoms (see Tr. 461), which language repeats verbatim in each subsequent treatment note from the Novant Health Headache Clinic (see Tr. 453, 554, 599, 912, 931). In none of those notes did the treatment provider indicate that she actually "observ[ed ] a typical headache event" or provide "a detailed description of the [observed] event," SSR 19-4p, 2019 WL 4169635, at *6. (See Tr. 454-55, 463-64, 556, 601, 914-15, 932-33.) Indeed, the providers instead noted normal attention, concentration, and gait. (See id.) The regulations make clear that an ALJ "will not substitute [a claimant's] allegations of pain

or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [a claimant's] impairment(s) to that of a listed impairment," 20 C.F.R. § 416.929(d)(3). See Smith v. Commissioner of Soc. Sec., No. 2:21CV10093, 2022 WL 1052427, at *5 (E.D. Mich. Mar. 4, 2022) (unpublished) (crediting the Commissioner's argument that the plaintiff's "self-reported descriptions of her headaches [we]re not medically equivalent to a medical professional's observations," because "[t]he SSA considers 'a detailed description from an [acceptable medical source]'" (quoting SSR 19-4p, 2019 WL 4169635, at *7)), recommendation adopted, 2022 WL 965022 (E.D. Mich. Mar. 30, 2022) (unpublished).

Furthermore, SSR 19-4p includes consideration of "limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day" in the medical equivalence analysis. SSR 19-4p, 2019 WL 4169635, at *7. As the Commissioner argues, Plaintiff remained able to work part-time at Walmart throughout much of the relevant period (see Tr. 52-54), and that fact "undercuts her Listing claim" (Docket Entry 18 at 18). See Smith, 2022 WL 1052427, at *5 (noting that "'frequency of headache events' is . . . one of several" factors to determine medical equivalence under SSR 19-4p, and that "ALJ assessed headache frequency alongside other factors, including the lack of limitations in functioning" and . . . did not err in concluding that because [the

plaintiff] engage[d] in many activities, including cooking, grocery shopping, doing chores, caring for a teenage daughter, and driving, she [wa]s not functionally limited in accordance with the SSR 19-4p guidance").

In short, any failure by the ALJ to provide a more detailed analysis of Listing 11.02(B) did not prejudice Plaintiff, because the record lacks ample evidence that Plaintiff's migraine headaches medically equal the criteria of Listing 11.02(B).

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 15) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) be granted, and that judgment be entered dismissing this action.

<u>/s/ L. Patrick Auld</u>
**L. Patrick Auld**
**United States Magistrate Judge**

April 27, 2022

33